IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **STEVEN D. DAROCY and** | § | |
| **JUDY C. DAROCY,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:10-CV-1259-L** |
| | § | |
| **CHASE HOME FINANCE, LLC,** | § | |
| **MORTGAGE ELECTRONIC** | § | |
| **REGISTRATION SYSTEMS, INC.,** | § | |
| **GRAND LENDING GROUP, L.P.,** | § | |
| **CODILIS & STAWIARSKI, P.C.,** | § | |
| **CTX MORTGAGE, CHASE** | § | |
| **MANHATTAN MORTGAGES** | § | |
| **CORPORATION, and** | § | |
| **JP MORGAN/CHASE,** | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are: (1) Plaintiffs['], Darocy & Darocy, Motion to Reconsider Order Granting Defendants Chase Home Finance LLC, JPMorgan Chase Bank N.A., and Mortgage Electronic Registration Systems, Inc,'s Motion to Dismiss Plaintiffs Third Amended Complaint, filed June 23, 2011; (2) Motion to Strike Defendants' Inaccurate Allegations, filed July 19, 2011; (3) Plaintiffs' Request for Correction of Motion to Strike, filed July 26, 2011; and (4) Amended Motion for Summary Judgment, filed November 21, 2011.

After careful review of the motions, briefs, record, and applicable law, the court **denies** Plaintiffs['], Darocy & Darocy, Motion to Reconsider Order Granting Defendants Chase Home Finance LLC, JPMorgan Chase Bank N.A., and Mortgage Electronic Registration Systems, Inc.'s

Motion to Dismiss Plaintiffs Third Amended Complaint (Doc. 63); **denies as moot** Motion to Strike

Defendants' Inaccurate Allegations (Doc. 66) and Plaintiffs' Request for Correction of Motion to

Strike (Doc. 69); and **grants** the Amended Motion for Summary Judgment filed by Codilis &

Strawiarski P.C. (Doc. 77).

## I.     Background

Plaintiffs originally filed this action on May 26, 2010, in County Court at Law No. 4, Dallas

County, Texas, asserting claims for aiding and abetting deceptive practices and violations of the

Deceptive Trade Practices Act ("DTPA"), the Uniform Fraudulent Transfer Act, the Texas Debt

Collection Practices Act ("TDCPA"),[1] against Defendants Grand Lending Group, L.P. ("Grand

Lending"); CTX Mortgage ("CTX"); Chase Home Finance LLC ("CHF"); Chase Manhattan

Mortgage Corporation ("CMMC"); JPMorgan Chase Bank, N.A. ("JPMC"); Mortgage Electronic

Registration Systems, Inc. ("MERS"); and Codilis & Stawiarski, P.C. ("C&S") (collectively,

"Defendants").   A temporary restraining order and temporary injunction, prohibiting Defendants

from selling, transferring, or conveying Plaintiffs' real property in Coppell, Texas, were entered by

the state court on May 28, 2010, and June 16, 2010, before the case was removed to this court on

June 25, 2010, based on federal question and diversity jurisdiction.

On November 12, 2010, Plaintiffs filed their Third Amended Complaint ("Complaint"),

which is the live pleading at issue.  All of Plaintiffs' claims stem from a home mortgage loan they

received from Grand Lending, L.P. ("Grand Lending") on June 22, 1999, and the subsequent

---

[1] The "Causes of Action" section of Plaintiffs' Third Amended Complaint does not include a TDCPA claim.  Plaintiffs nevertheless assert factual allegations and cite to sections of the Texas Finance Code that are applicable to the TDCPA.  The court therefore concludes that Plaintiffs intended to assert a claim under the TDCPA, and this claim pertains to CHF's, CMMC's, and C&S's debt collection and foreclosure activities in 2010.

attempts by CHF, CMMC,[2] and C&S[3] to foreclose on the property in 2010 after Plaintiffs failed to make payments on the loan in October 2009. Plaintiffs' loan was secured by property located in Coppell, Texas. In signing a promissory note ("Note") and deed of trust ("Deed of Trust") to acquire the property, Plaintiffs granted Grand Lending[4] a first lien on the property. After being executed, the Note and Deed of Trust changed hands several times before ending up with CHF and CMMC. According to Plaintiffs, C&S provided documentation to them reflecting that CHF and CMMC received an "unofficial" assignment of the Note and Deed of Trust from MERS on March 11, 2010, six days after C&S first notified Plaintiffs on March 5, 2010, of its intent to collect on the debt and foreclose on the property on behalf of CHF and CMMC. *See* Pl.'s Brief in Support of Resp. to C&S Motion.

Based on this alleged discrepancy and their inability to find any record of an official assignment of the original promissory Note to CHF in the Dallas County records, Plaintiffs contend that CHF and CMMC are not the true holders of the note. For this reason and also because CHF and CMMC allegedly failed to produce the original Note and other documentation to Plaintiffs, they argue that CHF's and CMMC's attempt to collect on the debt and foreclose on the property was unlawful. Plaintiffs further contend that Defendants failed: (1) to notify them of all transfers and assignments of the Note or Deed or Trust; (2) to maintain the Deed of Trust with the original promissory Note; and (3) to disclose at the time of the original transaction the method by which the

---

[2] Plaintiffs refer to CHF and CMMC collectively as "Chase" in their Complaint. The record reflects that CMMC was acting as the mortgage servicer for CHF.

[3] C&S is a Houston law firm hired by CHF, JPMC, and Chase Bank USA, N.A. to collect on debts and handle foreclosure proceedings of loans held by CHF, JPMC, and Chase Bank USA, N.A.

[4] As noted in a previous order of the court, Grand Lending no longer exists and was therefore dismissed from the suit.

Note would be sold, monetized and the deed securitized.  For similar reasons, Plaintiffs assert that C&S did not have authority to foreclose and its attempts on behalf of CHF and CMMC to initiate foreclosure proceedings was improper.  Plaintiffs also contend that C&S failed to cease debt collection efforts after they disputed the debt.

All of the Defendants, except CMMC and C&S, previously moved to dismiss Plaintiffs' claims against them.[5]  By order dated May 18, 2011, the court granted the motions to dismiss after concluding that Plaintiffs are not consumers under the DTPA and their claims are barred by applicable limitations.  The court also stated *sua sponte* that Plaintiffs' DTPA claim against C&S suffered from the same deficiencies.  The court therefore directed Plaintiffs to file a response addressing this matter by May 31, 2011, explaining why their DTPA claim against C&S should not be dismissed for the same reasons that their DTPA claim against CHF, JPMC, and MERS had been dismissed.

On May 31, 20111, Plaintiffs filed a response as directed by the court.  In addition, they filed a motion requesting the court to reconsider its ruling in granting the other Defendants' motions to dismiss.  Subsequently, on July 19, 2011, Plaintiffs moved to strike from Defendants' response to the motion for reconsideration what they contend are inaccurate allegations regarding CHF's and Defendants' status as note holders.  On November 7, 2011, C&S filed a motion for summary judgment, seeking dismissal of Plaintiffs' DTPA and TDCPA claims against it.

---

[5] The court mistakenly concluded in its prior order that C&S was the only remaining defendant who had not moved for dismissal of Plaintiffs' claims.  As explained herein, the court determines that Plaintiffs' DTPA claim against CMMC and Plaintiffs' TDCPA claim against CHF and CMMC remain pending.

**Memorandum Opinion and Order – Page 4**

II.     **Plaintiffs' Motion for Reconsideration of Order Granting Rule 12(b)(6) Motion to Dismiss filed by CHF, JPMC, and MERS**

Plaintiffs contend based on three grounds that the court erred in concluding that they are not consumers under the DTPA and their claims are barred by limitations.  The court has authority to reconsider its prior rulings.  For the reasons herein explained, the court determines based on applicable law that its prior ruling, granting CHC's, JPMC's, and MERS' Rule 12(b)(b) motion and dismissing Plaintiffs' DTPA claim, is correct.

A.      *Applicability of Flenniken*

Plaintiffs first assert that *Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705 (Tex. 1983) supports their position that they are consumers since they used the original mortgage loan to purchase real property.  CHF, JPMC and MERS respond that *Flenniken* is distinguishable and therefore inapplicable.

The court acknowledges that Texas law has undergone considerable departure from the rule in *Riverside* that a pure loan transaction lies outside the DTPA based on the logic that money is neither a good nor service.  *See Walker v. Federal Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (discussing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980) and  progeny of cases).  Without overruling *Riverside*, the court in *Flenniken* held that the plaintiffs were consumers since they "did not seek to borrow money; they sought to acquire a house." *Flenniken*, 661 S.W.2d at 708.  Similarly, in *Knight v. International Harvester Credit Corporation*, 627 S.W.2d 382 (Tex. 1982), the court concluded that the plaintiff was a consumer because he sought a loan to purchase a dump truck.  *Knight*, 627 S.W.2d at 388-89.

In both of these cases, however, the goods or services sought by the plaintiffs formed the basis for the DTPA complaints.  *Walker*, 970 F.2d at 123.  Based on this distinguishing factor, the

Fifth Circuit in *Walker* held that it is not enough that a plaintiff seek to acquire goods or services with a loan. The goods or services sought must also form the basis of the plaintiff's DTPA complaint. *Id.* (concluding that plaintiffs who sought a multi-million dollar loan for the construction of a hotel were not consumers under the DTPA as they "allege[d] no complaint pertaining to the [hotel] itself."). Here, Plaintiffs sought to purchase a home with the original mortgage loan; however, they allege no complaint about the home or real property itself. Instead, their complaint is with regard to the loan and Defendants' attempts at foreclosing on the Note and property. The court therefore concludes that Plaintiffs are not consumers under the DTPA and *Flenniken* is inapplicable. *See id.*

### B.     Timeliness of Plaintiffs' DTPA Claim

Plaintiffs contend that "Defendants' attempts to wrongfully and unconscionabley [sic] collect a debt was initiated in January 2010 [and] Plaintiffs timely discovered the deceptive acts and sought relief in May 2010, well within the two year statute of limitations." Pl.'s Mot. 2, ¶¶ 3-4. Since Plaintiffs are proceeding *pro se*, the court interprets their briefing and pleadings liberally to afford them all reasonable inferences that can be drawn from their briefing and pleadings. *See In re Texas Pig Stands*, Inc., 610 F.3d 937, 941 n.4 (5th Cir. 2010). Plaintiffs' argument regarding Defendants' conduct in attempting to collect on a debt appears to be in support of their claim under the TDCPA rather than the DTPA. If this is the case, the court concludes that it is not a proper basis for a motion for reconsideration since the court's order addressed only Plaintiffs' DTPA claim against CHF, JPMC and MERS, not their TDCPA claim.

This does not end the court's inquiry, however, because Plaintiffs' argument regarding debt collection activities can also be construed to mean that the factual allegations in their Complaint

regarding debt collection activities support their claims under the TDCPA, as well as the DTPA. The court therefore considers whether any of the allegations in Plaintiffs' Complaint, including alleged debt collection activities, support a DTPA claim that is not barred by applicable statute of limitations. Plaintiffs' allegations can be broken into two categories: (1) those that relate to events that occurred before May 26, 2008, including events that occurred at or near the time they executed the promissory Note and Deed of Trust in 1999; and (2) those that occurred after May 26, 2008, including attempts by CHF, CMMC, and C&S in 2010, to collect on the outstanding debt and foreclose on the property.

### 1.      Events Prior to May 26, 2008

Plaintiffs' claims based on alleged conduct or events that occurred prior to May 26, 2008, more than two years before Plaintiffs filed suit, are all time barred. Plaintiffs contend that their discovery in 2010 of facts pertaining to their Note and Deed of Trust was prompted by nothing more than general curiosity. DTPA claims are governed by a two-year statute of limitations. Tex. Bus. & Com. Code Ann. § 17.565 (West 2011). Under the statute, all such claims must be brought "within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." *Id.* Thus, the DTPA applies what is equivalent to a discovery rule.

The discovery rule, however, is "a very limited exception" to applicable statutes of limitation and applies only when the plaintiff's injury is "both inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed

limitations period despite due diligence." *Id.* at 734-35.  In determining whether an injury was inherently undiscoverable, the question is not whether the plaintiffs discovered their particular injuries within the limitations period, but whether the injury is "the type that generally is discoverable by the exercise of reasonable diligence." *Id.* at 735.  "Knowledge of facts, conditions, or circumstances that would cause a reasonable person to make inquiry . . . is equivalent to knowledge of the cause of action for limitation purposes." *Southwest Olshan Found. Repair Co., LLC v. Gonzales*, 345 S.W.3d 431, 438 (Tex. App.—San Antonio 2011, no pet.).

Here, Plaintiffs' June 22, 1999 Note with Grand Lending expressly states: "I understand that the Lender [Grand Lending] may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" C&S's App. 77.  The Deed of Trust similarly states "[t]he Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower." C&S's App. 9.  Thus, Plaintiffs were on notice that their Note with Grand Lending might be transferred or assigned without prior notice long before they filed suit in May 2010, and they provide no reason as to why they could not have inquired about the status of their Note and Deed of Trust before January 2010.

Plaintiffs' DTPA claim that is based on the following allegations is therefore barred by the two-year statute of limitations applicable to DTPA claims asserted as to CHF, JPMC and MERS: (1) alleged failures to notify Plaintiffs of transfers and assignments of the Deed of Trust and promissory Note that occurred before May 26, 2008; (2) alleged failures before May 26, 2008, to maintain the Deed of Trust with the original promissory Note; and (3) alleged failure to disclose the method by which the note would be sold, monetized and the deed securitized.  Accordingly, the court

stands by its prior determination that Plaintiffs' DTPA claims as to CHF, JPMC and MERS, based on these events, is time barred.

### 2. Events After May 26, 2008

Plaintiffs contend that Defendants, including CHF, JPMC and MERS, engaged in unlawful conduct in attempting to collect and foreclose on the Note and property after Plaintiffs defaulted. The court concludes Plaintiffs' DTPA claim with regard to these events and alleged conduct would not be barred by limitations.  In light of the court's determination that Plaintiffs are not consumers under the DTPA, however, Plaintiffs' claim under the DTPA still fails as to CHF, JPMC, and MERS.  Accordingly, Plaintiffs' motion for reconsideration on this ground is **denied.**

### C. Defendants' Standing to Foreclose

Finally, Plaintiffs contend that dismissal of their claims for alleged violations of the TDCPA and DTPA was improper based on their pleadings that Defendants "lack standing to foreclose, have presented untrustworthy documentation to support their acts, have wrongfully collected monies from Plaintiffs, and have not responded to requests for proof of claim, *inter alia*, fraudulent or deceptive transfer or assigns of Deed of Trust without proper jurat or authorized officials."  Pl.'s Mot. 2, ¶ 5.

As already explained, Defendants did not move, and the court did not make any rulings regarding Plaintiffs' TDCPA claim.  Moreover, Plaintiffs' allegations in this regard do not change the court's determination that they are not consumers for purposes of the DTPA. Accordingly, for this and the other reasons stated, the court **denies** Plaintiffs['], Darocy & Darocy, Motion to Reconsider Order Granting Defendants Chase Home Finance LLC, JPMorgan Chase Bank N.A., and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss Plaintiffs Third Amended Complaint.  The court also **denies as moot** Plaintiffs' Motion to Strike Defendants' Inaccurate

Allegations and Plaintiffs' Request for Correction of Motion to Strike as they do not affect the court's determination regarding Plaintiffs' motion for reconsideration.[6]

III.   **C&S's Motion for Summary Judgment**

C&S moves for summary judgment on Plaintiffs' DTPA and TDCPA claims.

A.      **Motion for Summary Judgment Standard**

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus.*

---

[6] Plaintiffs' Motion to Strike Defendants' Inaccurate Allegations and Plaintiffs' Request for Correction of Motion to Strike is based on their contention that Chase is not the official holder of the Note and Deed of Trust or that it has not come forward with evidence to substantiate its status as holder of the Note and Deed of Trust. Plaintiffs refer to all of the Chase Defendants as "Chase."

*Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).   Mere conclusory allegations are not competent

summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.

*Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).   Unsubstantiated assertions, improbable

inferences, and unsupported speculation are not competent summary judgment evidence.   *See*

*Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).   The party

opposing summary judgment is required to identify specific evidence in the record and to articulate

the precise manner in which that evidence supports his claim.   *Ragas*, 136 F.3d at 458.   Rule 56 does

not impose a duty on the court to "sift through the record in search of evidence" to support the

nonmovant's opposition to the motion for summary judgment.   *Id*.; *see also Skotak v. Tenneco*

*Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).   "Only

disputes over facts that might affect the outcome of the suit under the governing laws will properly

preclude the entry of summary judgment."   *Anderson*, 477 U.S. at 248.   Disputed fact issues that are

"irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment

motion.   *Id*.   If the nonmoving party fails to make a showing sufficient to establish the existence of

an element essential to its case and on which it will bear the burden of proof at trial, summary

judgment must be granted.   *Celotex*, 477 U.S. at 322-23.

### B.     Analysis

#### 1.     DTPA - Plaintiffs' Consumer Status

C&S contends that Plaintiffs do not qualify as consumers under the DTPA.   Plaintiffs

respond in conclusory fashion that they have established all of the elements necessary to sustain an

action under the DTPA.   For the reasons already explained, the court disagrees and concludes that

C&S is entitled to judgment as a matter of law on Plaintiffs' DTPA claim, because Plaintiffs are not consumers.

### 2.    TDCPA Claim

C&S contends that it is entitled to summary judgment on Plaintiffs' TDCPA claim against it because no foreclosure on Plaintiffs' mortgage was ever conducted and it complied with all applicable provisions of TDCPA.  Plaintiffs counter that C&S is not entitled to summary judgment based on their contention that C&S "fraudulently and knowingly proceeded to conduct a Substitute of Trustee sale of Plaintiffs' residence prior to transfer to Chase Home Finance or authentication of any documentation that would provide the establishment of title and debt" under Rule 730 of the Texas Rules of Civil Procedure.  *See* Pl.'s Resp. 1-2, ¶¶ 1-4.  Plaintiffs further contend that Defendants "sought to foreclose on Darocys' property without the requisite power to do so."  Pl.'s Resp. 3, ¶ 7.  Finally, Plaintiffs assert that "C&S caused null and void officiated documents to be circulated through the U.S. Postal Service in their notices and attempts to wrongfully collect a debt that was not valid."[7]  Pl.'s Resp. 3, ¶ 8.

The TDCPA permits a consumer to sue for threats, coercion, harassment, abuse, unconscionable collection methods, or misrepresentations made in connection with the collection of a debt.  Tex. Fin. Code Ann. § 392.001, *et seq*. (West 2006).  The TDCPA defines "debt collection" as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor" and has been held to apply to foreclosures on real

---

[7] The court does not consider this assertion by Plaintiffs in addressing C&S's summary judgment motion, as the Complaint contains no such allegations.

property.  § 392.001(5); *see Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 731 (N.D. Tex. 2011).

Plaintiffs allege in their Complaint that C&S (and Chase) "proceeded to foreclose" on their property in violation of sections 392.304(10) and 392.202 of the TDCPA:

1.      without proof of claim to establish standing to do so,

2.      using, distributing, or selling a written communication that simulates or is represented falsely to be a document authorized, issued, or approved by a court, an official, a governmental agency, or any other governmental authority or that creates a false impression about the communication's source, authorization, or approval, TX Fin. Code, Title 5, Sec. 392.304(10).

3.      C&S failed to cease collection efforts, as required by TX Fin. Code Title 5, Sub. C., 392.202, until investigation determined the accurate amount of the debt, if any.

Pl.'s Compl. 6, ¶ (e).  Plaintiffs further contend, based on the allegedly conflicting dates of the documentation that CHF, CMMC, and C&S provided to them in March and April 2010, that these Defendants intended to deceive them and misrepresent the nature of Plaintiffs' obligations under the Note and Deed of Trust.  Pl.'s Compl. 5, ¶ 17.

### a.      TDCPA Claim Based on Section 392.304(a)(10)

Section 392.304(a)(10) of the Texas Finance Code[8] provides:

---

[8] The court notes that the TDCPA does not contain a "section 392.304(10)"; however, Plaintiffs' reference to "using, distributing, or selling a written communication that simulates or is represented falsely to be a document authorized, issued, or approved by a court, an official, a governmental agency, or any other governmental authority or that creates a false impression about the communication's source, authorization, or approval" is a direct quote from section 392.304(a)(10).  The court therefore concludes that Plaintiffs' claim is based on section 392.304(a)(10).

(a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:
. . .
(10) using, distributing, or selling a written communication that simulates or is represented falsely to be a document authorized, issued, or approved by a court, an official, a governmental agency, or any other governmental authority or that creates a false impression about the communication's source, authorization, or approval;

Tex. Fin. Code Ann. § 392.304(a)(10).  In support of its summary judgment motion, C&S submitted the notice letters that it sent to Plaintiffs to establish that the communications do not simulate or represent to be authorized, issued or approved by a court or other governmental entity.  C&S further contends that the letters do not create the false impression about their source, authorization or approval, and even if they did, Plaintiff cannot prove the letters caused them any injury or damages.

Plaintiffs' response does not address these specific arguments by C&S or the evidence submitted by C&S.  Plaintiffs submitted certain evidence in support of their response, including the signature page of their Deed of Trust, documents reflecting the transfers of the Deed of Trust, and an incumbency certificate.  It is unclear, however, how this documentation supports Plaintiffs' claim under section 392.304(a)(10), and Plaintiffs provide no explanation in this regard.

After reviewing Plaintiffs' evidence, the court concludes that it does not raise a genuine dispute as to any material fact regarding Plaintiffs' TDCPA claim under section 392.304(a)(10). C&S's letters do not simulate or represent to be authorized, issued or approved by a court or other governmental entity; nor do they do not create a false impression about their source, authorization or approval.  Rather, it is clear from the correspondence that C&S is acting on behalf of CHC and CMMC with regard to Plaintiffs' Note and property.  Accordingly,  C&S is entitled to judgment as a matter of law on Plaintiffs' TDCPA claim under section 392.304(a)(10).

   **b.**  **TDCPA Claim Based on Failure to Cease Collection Efforts Under Section 392.202**

Section 392.202 of the Texas Finance Code provides:

(a) An individual who disputes the accuracy of an item that is in a third-party debt collector's or credit bureau's file on the individual and that relates to a debt being collected by the third-party debt collector may notify in writing the third-party debt collector of the inaccuracy. The third-party debt collector shall make a written record of the dispute. If the third-party debt collector does not report information related to the dispute to a credit bureau, the third-party debt collector shall cease collection efforts until an investigation of the dispute described by Subsections (b)-(e) determines the accurate amount of the debt, if any. If the third-party debt collector reports information related to the dispute to a credit bureau, the reporting third-party debt collector shall initiate an investigation of the dispute described by Subsections (b)-(e) and shall cease collection efforts until the investigation determines the accurate amount of the debt, if any.

. . .

(b) Not later than the 30th day after the date a notice of inaccuracy is received, a third-party debt collector who initiates an investigation shall send a written statement to the individual:

   (1) denying the inaccuracy;

   (2) admitting the inaccuracy; or

   (3) stating that the third-party debt collector has not had sufficient time to complete an investigation of the inaccuracy.

. . .

(e) On completion by the third-party debt collector of the investigation, the third-party debt collector shall inform the individual of the determination of whether the item is accurate or inaccurate. If the third-party debt collector determines that the information was accurate, the third-party debt collector may again report that information and resume collection efforts.

Tex. Fin. Code Ann. § 392.202.

C&S contends that it ceased collection efforts after Plaintiffs disputed the debt and it did not

recommence collection or foreclosure efforts until after providing Plaintiffs with verification of the

debt.  For support, C&S submitted a copy of the April 29, 2010 letter and attachments that it sent in

response to Plaintiffs' request for "'Proof of the validity of the debt' and/or the 'name and address

of the original holder of the note."  C&S's App. 51.  The letter states:

> Dear Steven Darocy and Judy Darocy:
>
> We are in receipt of your letter dated April 1, 2010.  In response please find attached copies of the Deed of Trust, Note, reinstatement quote and payoff statements.
>
> The original creditor was Grand Lending, L.P.
>
> The documentation and verification [are] that of our client [Chase Manhattan Mortgage Corporation acting on behalf of mortgagee Chase Home Finance, LLC]. This letter is for purposes of verification of the debt.  As the information requested has been provided to you, our client has instructed us to proceed with the foreclosure process.

C&S's App. 57.  C&S also submitted its May 21, 2010 response to Plaintiffs' May 17, 2010 demand

for additional documentation,[9] as well as copies of the documents attached to its response, including

a copy of the Note, copies of all assignments of the Note and Deed of Trust (including the

assignment to CHF), and a copy of a document executed on May 1, 2007, providing C&S with

---

[9] Plaintiffs' May 17, 2010 letter to C&S demanded that C&S provide "certified copies," "under seal," "authenticated and introduced by a competent fact witness available for examination of testimony" of: documentation to establish C&S's agency relationship with "JP Morgan d/b/a Chase Home Finance L.L.C." and any other entities claiming ownership of the mortgage; C&S's public hazard bonds; the bond/policy and bond/policy number; the bonds that were purchased to insure the loan; copies of all payments made on the loan; an affidavit of ownership by "JP Morgan d/b/a Chase Home Finance L.L.C."; proof of assignments; and proof that the assignments were recorded.  Plaintiffs also demanded that C&S provide the "true, genuine, original": note, mortgage, form S3 registration statement with OMB number, form 424(b)(5) prospectus with OMB number, form FR 2046 balance sheets with OMB number, form 2099 balance sheets with OMB number, all allonges, and "all documents evidencing public recording of documents by the purported 'lender(s)' pursuant to and in accordance with State Law requirements of recording transfers of title and/or deeds and/or proof of ownership of real property." C&S's App. 73-75.

power of attorney for three years to perform all lawful acts deemed necessary to prosecute and handle the foreclosure of loans held by CHF.  C&S's App. 76-90.

In addition, C&S submitted the affidavit of C&S managing attorney Mary M. Speidel ("Speidel"), who states that it is C&S's procedure to suspend collection efforts and delay foreclosure proceedings if it receives debt disputes and requests for verification.  C&S's App. 91-94.  After obtaining and providing verification of the debt, C&S then lifts its internal hold on the file and proceeds again with debt collection and foreclosure proceedings.  *Id.*  Speidel states that this same procedure was followed after Plaintiffs disputed the debt and requested verification.  *Id.* at 93-94.

Plaintiffs do not address these specific arguments by C&S or the evidence submitted by C&S other than to state: "[i]t is obvious C&S spent little time investigating the Darocys' dispute.  One does not have to strain to observe the discrepancies in the Plaintiffs' alleged chain of assignments."  Pl.'s Brief 10.  Plaintiffs also quote from an April 13, 2011 Order of the Board of Governors of the Federal Reserve in the Matter of JP Morgan Chase & Co., and EMC Mortgage Corporation, to support its contention that C&S's procedures for handling disputed debts, as described in Speidel's affidavit, are inadequate.

After reviewing the evidence submitted by C&S and Plaintiffs, the court concludes that Plaintiffs have not raised a genuine dispute of material fact regarding their TDCPA claim under section 392.202.  Plaintiffs' conclusory contentions regarding the adequacy of C&S's investigation are insufficient to create a fact issue, and they cite no legal authority to support their contention that a certain minimum amount of time for investigations is required under the statute.  Similarly, Plaintiffs' quoting an April 13, 2011 Order of the Board of Governors of the Federal Reserve in the Matter of JP Morgan Chase & Co. that apparently addresses issues regarding JPMC's processes for

mortgage loan servicing and foreclosure [10] is not evidence that C&S's conduct in attempting to

collect on the Note and foreclose on the property violated section 392.202 of the Texas Finance

Code.

The court also rejects Plaintiffs' conclusory argument that summary judgment is not proper

based on their contention that C&S fraudulently proceeded to foreclose on the property without the

authority to do so or without "authentication of documentation that would provide the establishment

of title and debt" under Rule 730 of the Texas Rules of Civil Procedure.[11]  *See* Pl.'s Resp. 1-2, ¶¶

1-4.  Plaintiffs cite to no authority to support their contention that C&S's alleged failure to provide

the type of proof demanded by Plaintiffs constitutes a violation of the TDCPA. Contrary to

Plaintiffs' belief, the Texas Property Code does not require a mortgagee or mortgage servicer to

produce the original note or deed of trust before conducting a nonjudicial foreclosure sale.  *See*

*Broyles v. Chase Home Fin.*, No. 3:10-CV-2256-G, 2011 WL 1428904, at *3 (N.D. Tex. Apr. 13,

2011); *Sawyer v. Mortgage Elec. Registration Sys., Inc.*, No. 3:09-CV-2303-K (BD), 2010 WL

996768, at *3 (N.D. Tex. Feb. 1, 2010), *adopted by* 2010 WL 996917 (N.D. Tex. 2010) (Kinkeade,

J.).

Moreover, an "unrecorded instrument is binding on a party to the instrument." Tex. Prop.

Code Ann. § 13.001(b) (West 2003).  Texas courts have also held that recordation is not necessary

---

[10] The order quoted by Plaintiffs is not part of the record but the quote appears to be from a Consent Order entered by JPMC, EMC Mortgage Corporation as mortgage servicer for JPMC, and the Board of Governors of the Federal Reserve System in Case Docket Nos. 11-023-B-HC and 11-023-B-DEO.

[11] Rule 730 provides: "Where any claimant has obtained possession of property, and shall ultimately fail to establish his right thereto, judgment may be rendered against him and his sureties for the value of the property, with legal interest thereon from the date of such bond. Such judgment shall be rendered in favor of the plaintiff or defendant in the writ, or of the several plaintiffs or defendants, if more than one, and shall fix the amount of the claim of each."

for liens, deeds, or deeds of trust to be enforceable against the parties to those instruments. *See Denson v. First Bank & Trust of Cleveland*, 728 S.W.2d 876, 877 (Tex. App.—Beaumont 1987, no writ) (holding that a deed of trust does not need to be recorded in order to convey title to the property); *Shaw v. Jackson*, 227 S.W. 520, 522 (Tex. Civ. App.—Beaumont 1920, no writ) (holding a valid lien was created despite the lack of recordation of the lien in county records). "[U]nder Texas law, the ability to foreclose on a deed of trust is transferred when the note is transferred, not when an assignment of deed of trust is either prepared or recorded." *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 625 (S.D. Tex. 2010) (citing *JWD, Inc. v. Federal Ins. Co.*, 806 S.W.2d 327, 329-30 (Tex. App.—Austin 1991, no writ)). Thus, Plaintiffs' theory regarding production of the original Note and other documents and timing of the assignment to CHF is without merit.

The Texas Property Code further provides that "a mortgage servicer may administer the foreclosure of property." Tex. Prop. Code Ann. § 51.0025 (West 2007). A mortgage servicer is "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." *Id.* § 51.0001(3). A mortgage servicer is not necessarily the holder of the original note. *See id.* ¶ 51.0001(3)-(4) (defining a mortgagee as, among other things, "holder of a security instrument," and stating that a "mortgagee may be the mortgage servicer"). The Property Code, therefore, contemplates that someone other than the holder of the original may lawfully foreclose on the security interest. *See Athey v. Mortgage Elect. Registration Sys., Inc.*, 314 S.W.3d 161, 166 (Tex. App.—Eastland 2010, pet. denied); *Sawyer*, 2010 WL 996768, at *3.

Here, the evidence establishes, and it is undisputed, that assignment to CHF was executed on April 2, 2010, and became effective on March 11, 2010. CHF is therefore the holder of the Note

at issue. Correspondence and documents in the record state that CMMC was acting as mortgage servicer for CHF pursuant to a Servicing Agreement that authorized CMMC to represent CHF, but the Servicing Agreement is not part of the record and there is no other evidence in the record to substantiate CMMC's status as mortgage servicer. C&S, nevertheless, produced evidence that it had authority to act on behalf of CHF in attempting to collect and foreclose on the outstanding debt, and Plaintiffs have come forward with no evidence to show that C&S's power of attorney was invalid.

Moreover, while Plaintiffs contend that C&S did not have authority to initiate collection and foreclosure proceedings on the date C&S first contacted Plaintiffs on March 5, 2010,[12] the record demonstrates that all such efforts by C&S were halted until after the assignment became effective, and after Plaintiffs' requests regarding verification of the debt were addressed to the extent required by the TDCPA. *See* § 392.202(b) and (e). More importantly, although C&S's first letter to Plaintiffs was sent on March 5, 2010, six days before the assignment to CHF became effective, there is no evidence to support Plaintiffs' contention that C&S intended to deceive them or misrepresent the nature of their obligations under the Note and Deed of Trust or CHF's status as note holder, by merely notifying Plaintiffs of its intent to collect on the debt and foreclose on the property within thirty days. *See* C&S's App. 17-18. Plaintiffs' argument in this regard and their unusual demands for large amounts of documentation appear to be nothing more than an attempt to take advantage of a technicality to avoid their obligations under the Note and Deed of Trust. Accordingly, Plaintiffs' contentions are without merit and insufficient to raise a disputed issue of material fact as to their TDCPA claim against C&S. C&S is therefore entitled to judgment as a matter of law on this claim.

---

[12] Plaintiffs' contention in this regard appears to be that the assignment to CHF had not yet occurred when C&S contacted them the first time on March 5, 2010. According to the documentation submitted by C&S, the assignment to CHF was not effective until March 11, 2010. *See* C&S's App. 87-88; Compl. 5, ¶ 17; and Pl.'s Resp. 2, ¶ 4.

**Memorandum Opinion and Order – Page 20**

IV.    **Court's *Sua Sponte* Motion for Dismissal of Plaintiffs' Remaining Claims**

The court incorrectly noted in its May 18, 2011 memorandum opinion and order that the only defendant remaining in this action was C&S.  After carefully examining the Complaint, it appears that there remains a DTPA claim against CMMC that was not addressed in the motion to dismiss previously filed by Defendants CHF, JPMC, and MERS.  It also appears that Plaintiffs' TDCPA claim against CHF and CMMC remains pending.  The court believes that Plaintiffs' DTPA as to CMMC and their TDCPA claim as to CHF and CMMC suffer from the same flaws identified by the court in this memorandum opinion and order.  Accordingly, in light of the court's ruling, it believes that Plaintiffs' DTPA and TDCPA claims against CHF and CMMC cannot survive dismissal and *sua sponte* moves for dismissal of these claims. Plaintiffs are entitled to respond to the court's motion, and they are **directed** to file a response to the court's *sua sponte* motion by **March 29, 2012, 12:00 p.m.**, stating why their DTPA claim against CMMC and TDCPA claim against CHF and CMMC should not be dismissed for the same reasons set forth in this memorandum opinion and order.

V.    **Conclusion**

For the reasons stated herein, the court **denies** Plaintiffs['], Darocy & Darocy, Motion to Reconsider Order Granting Defendants Chase Home Finance LLC, JPMorgan Chase Bank N.A., and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss Plaintiffs Third Amended Complaint; **denies as moot** Motion to Strike Defendants' Inaccurate Allegations and Plaintiffs' Request for Correction of Motion to Strike; and **grants** the Amended Motion for Summary Judgment filed by Codilis & Strawiarski PC.

Plaintiffs' claims against C&S are accordingly **dismissed with prejudice**. Plaintiffs are **further directed** to file a response **to the court's *sua sponte* motion of dismissal regarding Plaintiffs' remaining DTPA claim against CMMC and TDCPA claim against CHF and CMMC** by **March 29, 2012, 12:00 p.m.  CHF and CMMC shall not file a reply to Plaintiffs' response unless directed to do so by the court.** *Plaintiffs are placed on notice that failure to comply with the court's order to file a response by March 29, 2012, 12:00 p.m., will result in the dismissal of its DTPA and TDCPA claims against CHF and CMMC, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to comply with a court order.*

**It is so ordered** this 9th day of March, 2012.

Sam A. Lindsay
United States District Judge